Please proceed. Thank you, Your Honor. This is Randy Earlywine for the appellants. May it please the court. This case involves over 500,000 California job seekers who, as a condition of starting employment, were required by their prospective employers to undergo pre-employment medical screening at Defendant U.S. Healthworks, which was the largest occupational health care provider in state of California at the time, having 78 locations throughout the state. During these screenings, U.S. Healthworks required that the job seekers divulge every conceivable medical condition and disability from birth to present, no matter how irrelevant to the job. Using a standardized questionnaire that USHW had created and implemented, where an applicant refused to answer any question, U.S. Healthworks notified the employer that the applicant had failed to complete the test, the exam, and therefore the employer would deny employment to the applicant. I'm not clear on the basis for your Unruh Act claim. I'm probably mispronouncing it. But doesn't that assume that USHW is not an agent, whereas, isn't it clear that it was an agent? Well, the defense denies that they were an agent. We have alleged that they were an agent. The lower court held that we had sufficiently alleged agency, but the defense here has denied it. So it's a question of fact. And as a result, we've alleged an alternative claim under the Unruh Act. Well, so do counsel, do you concede that if Healthworks is considered an agent for purposes of your FEHA claim, then the Unruh claim cannot succeed? I believe that's correct, Your Honor. Okay. Well, so does that mean if we were to ruin your favor on the FEHA issue that's raised before us, we don't need to reach the Unruh Act issue? No, you don't. The answer is yes, you would, because the agency allegation is disputed by the defense. They claim that they were not an agent. So that will be up to the trier of fact to determine if they're an agent, they have FEHA liability. If they're not an agent, they have Unruh liability. But they have to be one or the other. So if we determine they are an agent, then that necessarily means they could not be liable under Unruh. Isn't that correct? That is correct, Your Honor, except that we're at the pleading stage now. This is not a motion for summary judgment. This is not after jury trial. We're at the pleading stage. So the defense is taking the position they're not an agent. We've alleged it, they're denying it. So that's going to have to be determined by the trier of fact. And depending on how the trier of fact comes out on that, it could either be FEHA or Unruh. So you're asking us to let both claims go forward? That's correct, Your Honor. We're entitled to make alternative pleadings on the same set of facts. And that's what we've done here. So it's hard for me to say you've stated a plausible claim under both of them, though. Well, I think we're again, we're entitled to make alternative pleadings. That's not contested. The lower court agreed with us that we are entitled to make alternative allegations. And that's what we've done. You'll note that the agency allegation is based upon, you know, an applicant status. The Unruh claim is based upon the fact that the USHW in their own documents treated these applicants as patients. They had patient consent, they had signed patient consent forms, they had them sign documents that had patient signature lines. So you've got really, you know, you've got either the agency side or you've got the side where these applicants are really patrons or customers of US Health Works in terms of getting one of these evaluations. Counselor, let me ask you on a different point. Is it your position that Health Works was actually responsible for the individuals not being employed, not being hired? Well, that's correct, Your Honor. As we've alleged in the paragraphs 30 to 32 in our agency allegations in our third amendment complaint, US Health Works came up with this form that's in issue here. They had like 80 separate items they asked the applicants about from everything, disability, medical conditions from birth to present. And the US Health Works is responsible because the employers delegated the decision whether to hire these folks really to US Health Works. That's the allegation. Counsel? Yes. Why did US Health Works have to then go back to the US Health Works? Why wasn't US Health Works entitled to just deny them employment on the spot if they had the authority to do that? Well, they effectively did that by making quote-unquote recommendations. And our allegation is that the employers as a matter of course followed the recommendations. So effectively, it was the US Health Works making the decision. We also indicated in our agency allegations that US, that the employers had the right to the they did provide protocols to US Health Works and in what tests they wanted to be conducted. But the form that's involved here that has these 80 questions grouping in 24 groupings was created and implemented by US Health Works. In our view, they're the responsible party for the misconduct here. Counsel, you don't dispute that the employer had the right to get health information? No, so long as it was job related and consistent with business necessity under FIHA. So what should the employer have done in your view in this case? Well, I think you can look at the Disney case here, Disney versus Rodriguez about how narrow, narrowly tailored the questions have to be to job applicants to make sure that they don't, number one, invade the privacy, which is one of FIHA's requirements under the 2000 amendment that added this limitation. And secondly, that, you know, they had to, you know, they had these things have to be job related. The people that, you know, they have to narrowly tailor these questions. You know, these people are applicants, they're just coming to get they want a job. And California says, well, you can require they have a medical exam to get that job, but to be protective of their privacy and their employment rights, you can't ask any questions that are beyond those that are job related. And here the issue about asking about venereal disease and pregnancy and menstrual problems, I mean, completely off the charts have nothing to do with the job requirement. Can I ask you another question about the UNRURAC claim that you've advanced? Yes, please do. On the surface, it seems not quite to work because the UNRURAC requires discrimination and your whole complaint is that they're asking every single person, you know, this exact the exact same set of questions. I just have a hard time on the surface seeing where the discrimination is. But I know you have a more nuanced theory and I was hoping you could help me understand it better. Thank you. There are two issues there. First is the, we allege gender discrimination under the UNRURAC. And they asked, they had separate boxes on the questionnaire that said for women only and for men only. And that's a distinction between the genders. The question then is. But counsel, I mean, the questions that were posed just to women and just to men were kind of, I mean, I don't know, I have a hard time seeing that as discrimination. It was just kind of obvious. You want you want men to be asked, you know, when was their last menstrual site? I mean, that's that doesn't make sense. But the fact that they asked them in men only women only boxes, the first step, did they make a distinction? Yes, that's all that requires a distinction or discrimination. The second issue. Before we leave that point, do you have a case under the UNRURAC that imposes liability when one gender is asked, is treated one way and a different. Everybody in the gender is treated the same for circumstances unique to that gender. Do you have a case that says that? I don't. In answer to your question, Your Honor, we're alleging both gender discrimination and perceived disability on the gender issue. I'm not aware of a case like that, but they just talk about making a distinction or discrimination between based on gender. They've done that here. They've asked different genders, different questions. Are you saying that in order that the person can have clarity as to what questions they need to answer or not answer? So a question about a menstrual period, you would say that it has to be answered by a man? No, it doesn't, because they didn't ask the man. I know they didn't, but you're saying that that was discrimination, and I don't see why it's discrimination. It's discrimination because they made a distinction. A rational distinction based on what, a million years of evolution? Thank you. It may be more than that, Your Honor, but let's go with that one. The NRAC requires its two-step process. Number one, did they make a distinction or discriminate? Yes, they did make a distinction. Now, you say that's because of anatomical differences. That goes to the public policy issue. Do they have, as a matter of public policy, were they entitled to make that distinction? Our position is when they ask irrelevant questions that have nothing to do with the job, and that's the purpose of the examination, then they've discriminated based on gender. Even though, Your Honor, say, well, maybe it's anatomical differences, but they've still made the distinction. That's not the issue. The issue is whether there's a public policy that allows them to do that. Here, there is not a public policy that allows them to do that. FEHA says they can't do it because the questions have to be so they can't be asking those questions in the first place, and in doing so, they've made a distinction between men and women. That's our case. As far as the perceived disability- You think that Congress has the power to repeal anatomy? Or the state legislature. State legislature, I'm sorry. Well, it depends on whether it's the California legislature or Congress, I suppose, Your Honor. But if I may, going back to perceived disability, they perceive everybody as being disabled. That's the reason they have a whole host of disability questions. It's not unusual or unexpected that everybody that's asked, given this form, because they are perceived as disabled, that they would- Simply asking the question manifests a perception of disability? Simply asking the question? Yes, that's correct, Your Honor. Do you have a case that supports the proposition that simply asking a question about someone's ability to lift pounds, that's a perception of disability? Do you have a case that says that? I don't have a specific case that says that, Your Honor, but the common sense under 51, I believe 51.5 of the civil code, is that that is the case. Now, all these questions are good questions, and we have asked, if there's any question by this panel, we have asked that the court certify these issues to the California Supreme Court, and also the FIHA question as well. I'd like to reserve- I'm going to stop here. I've got a minute 50 left, and I'd like to reserve that time. All right. Thank you, counsel. Counsel? Response? Thank you, Your Honor. Ray Cardozo, representing the defendants in this action. Neither the FIHA nor the UNRUH Act, nor any claim in this case, should be allowed to go to the Supreme Court. Judge Rawlinson's questions relating to the FIHA, and then Justice Watford, I turn to the points you raised on the UNRUH Act. We're judges, not justices. Some people say there is no justice on the United Circuits, though. I'm sorry. Bad habit from state practice. Right. State law case. Right. Judge Rawlinson, your question about, is it the employer responsible for the hiring and firing, the key to the FIHA issue. The agency allegation necessarily establishes it's a matter of law, because you can't be an agent unless the principal has control. The employer has the ultimate authority on this issue. And you saw it. Counsel himself, in his argument, pointed out that this exam was a condition of hiring. The employer alone set that condition. The employer alone decided you need to do this exam and sent him over. The medical provider just provided the service. Throughout the briefing in this case, the plaintiffs have never discussed the critical word in the statute that's dispositive of the entire case. They focused on the agency language of the FIHA. But the exact text is a person acting as an agent of an employer. Because the California Supreme Court has already construed that language to mean that person acting as an agent of an employer does not include individuals who are agents. The argument necessarily means that exact same text means that the phrase person acting as an agent of the employer only applies to business entities and not natural persons or individuals. That's not only contrary to the natural plain English meaning of the word person, but the text of the statute itself defines person to include one or more individuals, partnerships, associations, corporations. So the proposed distinction they're making between the California Supreme Court's authoritative holding that this agency language doesn't apply to individuals and business entities is flatly irreconcilable with the textual definition of the word person in the statute. Counsel, I thought we had a set of Title VII cases on the federal court side that interpreted essentially the same kind of statutory scheme to hold in the plaintiff's favor here. And I further thought that the California courts had said, yeah, we look to those federal cases for guidance because basically the two schemes are roughly parallel. Is that not correct? That is not correct, Your Honor. Those federal cases can be explained, they fall into three categories. One is a line of cases that the California Supreme Court in Reno found outdated and unpersuasive. And so the early cases that were ones that would have been interpreted agent as opposing the employer's liability on the agent, that line of cases has been rejected. But then there are two sort of sets of cases where the agent is acting as the employer. The employer delegates the hiring, firing, employment functions to the agent. One was a case where the employer is bound by what the agent did. One case involved the applicant had to undergo a test that was claimed to be discriminatory. And then the school districts, they had no discretion to hire them anyway. They were bound by the test. So in those cases, if you think about it, you don't even have an agent at all because the purported agent has the dispositive ultimate control. They're not acting as agents at all. The fundamental principle of agency, again, is the principal has the control. That's not the case here. Alleged in the complaint and said again, an argument, these were recommendations, but the employer required the exam, the condition of hiring, that's Kim's employer, and the employer, the ultimate authority, what to do when the medical service provider says, hey, such and such refused to answer the question, refused to participate in the exam. It's up to the employer at that point to decide what to do with that situation. And only an employer makes that decision. So only an employer could be liable under FIHA. And I want to come back to the discussion in Reno versus Baird about why we don't make agents liable for the principles for the employer's liability. They say all of the reasons given were applicable solely to individual supervisors. That's simply not true. Almost every reason given in Reno applies to a business entity that's an agent just as much as an individual. But counsel, didn't the court decline to address that precise point? It declined to address that precise point, but all the reasons it gave, that's why we're here today. If they'd addressed it, we wouldn't be here today. But all the reasons they gave for why we don't apply it to individuals, apply fully to business entities as well. But if they declined to reach that point and made that explicit, doesn't that suggest that we should certify it? They did that, presumably knowingly and intentionally, and leaving open the question that you argue has been closed, but they said it was still open, or they weren't reaching it. So what would be the harm in certifying? So two points, Judge Rakoff. First, you obviously could certify it. They declined to reach it. It's an unresolved question, so you could. The reason I would suggest it's not necessary to certify it is when you take that holding and put it against the statutory textual definition of person, the distinction they propose is simply untenable. So although they declined to reach it, you don't have to send every question to the California Supreme Court just because they haven't decided the question. In every case, we don't have where the Supreme Court explicitly refrained from deciding the question, and they had the same language that you're telling us now is dispositive, and so that raises a question in my mind as to whether or not they just wanted to reserve that issue for a case where it was more properly confronted, and this appears to be that case. Absolutely, absolutely. There is a case for certification, but the other thing I would add on this is that this decision came down in 1998, Reno v. Baird decision. Since then, 24 years, if you put the text of person next to Reno v. Baird, this argument's untenable. The legislature hasn't responded by saying, oh, wait a minute, we got to amend this definition of person because paired next to Reno, it, of course, is going to include business entities. The legislature hasn't responded. No California case, Supreme Court appellate any, has remotely endorsed this theory, and if you look at the only two cases that any party is cited in or amici that involve the situation of impermissible medical exams, there's the case of Rodriguez v. Disney, a district court case that the plaintiff cited, and there's a western district of Pennsylvania case the Pennsylvania plaintiffs also cited called EOC v. Crane. In both cases, the claim wasn't even made against the medical service provider. The claim was made exclusively against the employer, so I think you've got a situation where you've had 24 years of this being out there. The logical conclusion and inference from Reno, no one has even thought to make this argument or this point before, and I come back to the fundamental incompatibility with their theory and what Reno said. Reno pointed out that employment actions often result, have a collective nature to them. Someone makes a personnel evaluation, someone, a different person relies on that to make the hiring or firing decision, and then a third person in the only the employer through its vicarious liability for the acts of all of its agents can be deemed responsible for the collective, each one of the link in the chain. If we start posing individual liability on each agent, the conflicts of interest they talk about in Reno arise, and you've got this confounding problem of there's no principle in the law that permits one to hold a medical provider liable for the employer's decision to not hire the person because the employer is the principle and controls the medical provider, and so you can hold employer liable, but there's no rational principle in law where you can hold medical provider liable for an employer's actions that it doesn't control. All of those things that Reno said are fundamentally applicable to this situation as well, and you create confounding problems when you impose a theory of liability that the text of the statute doesn't allow, no case has even suggested, and that holds someone liable outside of any recognized principle of respondeat superior. Your issue with the plaintiff's allegations is that they have not alleged a, I'm trying to figure out what you think they, how they fell short, because if I remember their allegation is essentially that, yeah, as a technical matter you're right, you the defendants are right, that the defendants don't have the final say, but in the real world their refusal to certify the person as having passed this exam, in virtually every single instance that results in the person not being extended, their employment offer is revoked. So I guess just in the real world, why isn't that enough? It's kind of de facto, authority has been transferred to these other the person's offer is going to be good or not. It's more than a technical distinction, Judge Watford, it's a matter of law distinction, because again, they can't establish the essential element of their claim that USHW is an agent, unless it's a matter of law, the employer controls it as the ultimate say. So they could say, yeah, you know, this kind of has that precipitous effect, but legal control is everything in the law. Without it, the doctrine of respondeat superior doesn't apply. And, but with it, the employer is necessarily liable, which was one of the fundamental policy reasons that the amici and the plaintiffs again have glossed over. Unambiguously, the law is settled, the employer is liable. We're talking about extending liability to impose duplicative additional liability on the medical service provider. And Reno talked about, there is little value in adding that additional defendant liability when the employer is already liable. But you do create these confounding problems of potential conflicts of interest, where the agent suddenly has two masters, they can't just serve their principal, they owe a conflicting responsibility under the FIA to the plaintiff. Where's the conflict? I guess, given that we're talking about a statutory prohibition on asking certain questions that aren't sufficiently job related, I guess I'm not seeing the conflict. Let's say an employer comes to your clients and says, Hey, I know I'm not allowed to ask these questions because they have nothing to do with whether the person's qualified for the job. But here's the set of questions we want you to put to them. Please do it. You as the defendant, you have the ability to say, Well, actually, we're going to need you to establish that this has something to do with the job because otherwise, this is illegal. So we're not going to do it. Where's the conflict from your client standpoint? It's a very similar conflict to the supervisor conflict they discussed in Reno. And it's this, no one is a crystal ball or no one's perfect. So in making this decision, the medical provider has to be free to just perform the job they're asked to take. If they, not the employer who asked them to do this exam, and who's going to make the decision on what they report or recommend, but if they themselves are personally liable, not the employer, they're going to tailor, shade, twist their decision on what's job related and not job related in the direction that avoids their own personal liability. So some things that may in fact be job related and lawful, they're going to shade themselves away from, which is exactly what Reno talked about with the supervisor who has to make the personnel decision for the employer. They will shade away from making decisions that could lead to personal liability, even though they might be lawful. And that's the problem. That's the conflict. It's a very similar, and it's a fundamental conflict anytime an agent has two masters. An agent only can have one. All right, counsel, you've used your time. Are there any other questions from the panel? It appears not. Rebuttal? Thank you, your honor. First of all, I think it's important again to note that the attorney general of the state of California has filed an amicus brief on the FIHA issue, indicating that it is a strong policy in the state of California that agents be held liable under FIHA. And the counsel said that basically none of the public policy concerns support extension to corporate agents. That misreads the Reno decision. Reno principally said that individual supervisors couldn't be held liable because it would be incongruous with the fact that FIHA only subjects employers having more than five employees to liability under FIHA. It would be inconceivable the legislature intended to have an individual supervisor liable under those conditions. The state of California has 78 locations in the state of California, conducts over 200,000 of these exams a year, and every employer is sending things over to U.S. Health Works and letting them go. We've alleged that U.S. Health Works was an agency. That issue was not contested by the defense in their brief. The lower court held that we whether or not it's a person or FIHA coverage person was not raised in the court below or here in their briefing. They're trying to raise new issues at the time. We agree with your honor that this should be certified to the California Supreme Court on the FIHA claim and also on the UNRRA claims. Counsel indicated there's little value in adding additional defendants. Our view here is that unless an agent like this is held liable that's formed a cottage industry of these 200,000 a year exams, they will continue on unimpeded in violating FIHA and they ought to be held responsible and a message needs to be sent to them and they need to be held liable and accountable for their violations. What's your response to opposing counsel's observation that the employer has already been held liable and so the agent who was not the final decision maker should not be held liable in addition? Well because the agent here has effectively made the decision not to pass this person and that leads directly to taking away their job. But the employer has already been held responsible for that so why should there be liability? Well for two reasons. First of all, you have to deter this conduct and the only effective way to deter this conduct where all these employers and here there were over 15,000 employers that sent their job applicants over to U.S. Health Work to make this decision and delegated in that respect their decision making process to U.S. Health Works. That's the way you deter this and the Attorney General here is saying you have to deter these people. I mean this is an invidious practice that goes against the remedial purposes of FIHA and the only way to effectively stop it is to go after the agent that's responsible for doing it. All right counsel, thank you. You've exceeded your time. Thank you for both counsel. Any other questions from the panel? All right. The case just argued is submitted for decision by the court. We The case of Thomas v. Empire Springs Charter School
judges: RAWLINSON, WATFORD, Rakoff